# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00252-CR

---

**Kendrick Tremayne Newman, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 26TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 17-0293-K26, THE HONORABLE DONNA GAYLE KING, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Kendrick Tremayne Newman of the first-degree felony offense of murder, found that he did not act under "sudden passion," and assessed his punishment at eighteen years' imprisonment. *See* Tex. Penal Code §§ 12.32(a) (establishing punishment range for first-degree felony offense at five to ninety-nine years or life imprisonment), 19.02(b)(1) (defining offense when defendant intentionally or knowingly causes individual's death), (c) (providing that murder is first-degree felony offense unless defendant proves, under subsection 19.02(d), that he acted "under the immediate influence of sudden passion arising from adequate cause"). The district court rendered judgment consistent with the jury's verdict. In three issues on appeal, Newman contends that the district court abused its discretion by admitting certain evidence during the guilt-innocence phase of trial and by denying his requested

instruction on the defense of necessity. We will affirm the district court's judgment of conviction.

## BACKGROUND[1]

A jury convicted Newman of murdering John Ammon after an altercation inside a convenience store. The medical examiner determined that Ammon sustained eleven gunshot wounds to his body causing his death. The jury heard testimony from witnesses to the events preceding the offense, including some who saw the shooting occur outside the store's entrance. Additionally, as set forth further in our discussion of Newman's first two issues, the jury heard a detective testify that the gun recovered by police was not registered to Newman and heard Ammon's wife testify that Ammon was her husband of fourteen years, father of their two sons, and a war veteran.

During the charge conference, Newman requested jury instructions on self-defense and necessity. The district court granted the request for the self-defense instruction but denied the necessity instruction. However, when the charge conference resumed the next morning, Newman abandoned his request for the necessity instruction.

The jury found Newman guilty of murder and assessed punishment, and the district court rendered judgment on the verdict. This appeal followed.

---

[1] We provide only a brief background because Newman raises no challenge to the sufficiency of the evidence supporting his conviction and a detailed recitation of the facts underlying his conviction is unnecessary to our disposition of his appellate issues. *See* Tex. R. App. P. 47.1 (requiring issuance of opinion that is brief as possible but addresses every issue raised and necessary to final disposition of appeal).

## DISCUSSION

### Gun-Registration Evidence

In his first issue, Newman contends that the district court abused its discretion by admitting evidence that the gun used in the commission of the offense was not registered to him. Newman contends that this evidence showed that he "possessed a stolen firearm[,] which constituted extraneous offense evidence[,]" and that it affected the jury's verdict by "unfairly paint[ing him] as a violent, law-breaking thief" during the guilt-innocence phase of trial. Extraneous-offense evidence necessarily involves proof of prior criminal conduct by the accused. *McKay v. State*, 707 S.W.2d 23, 31-32 (Tex. Crim. App. 1985); *Baxter v. State*, 645 S.W.2d 812, 815 (Tex. Crim. App. 1983) ("[B]efore the rules relating to the admissibility of extraneous offenses come into play, there must be some type of inadmissible evidence presented of the accused's prior criminal conduct for error to be present."). If the evidence fails to show that an offense was committed or to connect the accused to the offense, then evidence of an extraneous offense is not established. *McKay*, 707 S.W.2d at 32.

In *McKay*, the trial court heard evidence that at the time of his arrest, McKay was found driving a vehicle belonging to the deceased's father. *Id.* at 31. Police testified that a license-plate check showed that the license plates on the vehicle were not registered to that vehicle but to one owned by a resident of another city. *Id.* The Court of Criminal Appeals held that this testimony did not show that the vehicle was stolen, establish that McKay stole the vehicle, or implicate the vehicle in any misconduct, and thus, that no improper extraneous-offense evidence was admitted. *Id.* at 32.

Here, Newman complains of the testimony of Detective Jeff Hill of the Round Rock Police Department, who testified, over objection, that the gun recovered by police officers was not registered to Newman:

> Q [Prosecutor]: During your investigation into this case, did—were you aware of whether or not a firearm was recovered from the scene?
>
> A [Detective Hill]: I was aware.
>
> Q [Prosecutor]: Okay. And were you aware whether or not—generally speaking, do firearms have serial numbers?
>
> A [Detective Hill]: They do.
>
> . . . .
>
> Q [Prosecutor]: Did you determine whether or not the gun that was found at the scene was registered to John Ammon?
>
> A [Detective Hill]: It was not.
>
> Q [Prosecutor]: Was it registered to—as you recall, to anyone under the name of Ammon?
>
> A [Detective Hill]: No.
>
> Q [Prosecutor]: Was the gun found at the scene registered to Kendrick Newman?
>
> A [Detective Hill]: No.
>
> Q [Prosecutor]: Was it registered to anyone with the name Newman?
>
> A [Detective Hill]: No.
>
> [Prosecutor]: Pass the witness.

Detective Hill did not state that the gun was stolen, implicate Newman in any alleged theft of the gun, or suggest that Newman knew the gun was stolen. Detective Hill's testimony did not provide evidence of an extraneous offense because it fails to show that a theft of the gun was

4

committed or that Newman was connected to any such theft. *See id.* We conclude that Newman failed to show that Detective Hill's testimony constituted evidence of an extraneous offense or that the district court abused its discretion by admitting this testimony. *See id.* Accordingly, we overrule Newman's first issue.

**Wife's Testimony About Ammon**

In his second issue, Newman contends that the district court abused its discretion by admitting irrelevant and unfairly prejudicial evidence from Ammon's wife during the guilt-innocence phase of trial. She testified that she was married to Ammon for fourteen years; that they had two sons together; and that Ammon served in the military, including deployment during the war in Iraq. Newman complains that such information was irrelevant to a determination of his guilt or innocence and that it constituted victim-impact evidence. *See* Tex. R. Evid. 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); *Miller–El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990) (noting that victim-impact evidence generally does not tend to "any tendency to make more or less probable the existence of any fact of consequence at the guilt stage of trial."). He also complains that any probative value of that testimony was outweighed by its unfair prejudice and served only to sway the jury based on who Ammon was, rather than the ultimate question of Newman's guilt or innocence of the offense. *See id.* R. 403 (authorizing exclusion of otherwise relevant evidence when its probative value is substantially outweighed by danger of unfair prejudice).

Texas Rule of Evidence 403 authorizes exclusion of evidence only when there is a clear disparity between its degree of prejudice and its probative value. *Davis v. State*, 329

5

S.W.3d 798, 806 (Tex. Crim. App. 2010). "The term 'probative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Id.* (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)). "'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (quoting *Casey*, 215 S.W.3d at 880).

Victim-impact evidence is evidence concerning the effect that the victim's death will have on others, especially the victim's family members. *Haley v. State*, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005). Victim-impact evidence generally lacks "any tendency to make more or less probable the existence of any fact of consequence at the guilt stage of trial." *Miller–El*, 782 S.W.2d at 895. But background evidence that does not describe the physical, psychological, or economic effect of a crime on the victim's family has been held admissible. *See Renteria v. State*, 206 S.W.3d 689, 705 (Tex. Crim. App. 2006) (concluding that evidence from victim's mother about where victim attended school, what type of student she was, and what she liked to do was not victim-impact testimony); *Matchett v. State*, 941 S.W.2d 922, 931 (Tex. Crim. App. 1996) (concluding that victim's widow's testimony stating that she had been married to him for twenty-five years, that they had five children together, that he was home alone on night of his murder, and identifying him in photograph with friends was not victim-impact testimony); *DeLarue v. State*, 102 S.W.3d 388, 403-04 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (concluding that testimony from victim's mother about how she learned of her daughter's death and identifying photographs of victim that predated offense was "victim-background information," not victim-impact evidence, because it did not concern physical, psychological, or economic effect of crime on victim or her family but showed that mother

"properly fixed the date of the event in her mind" and provided background information about victim); *see also Brown v. State*, No. 03-04-00535-CR, 2006 Tex. App. LEXIS 7556, at *7 (Tex. App.—Austin Aug. 25, 2006, no pet.) (mem. op., not designated for publication) (concluding that mother's testimony was admissible because it "simply placed the deceased in context as a real human being, allowing the jury to appreciate the 'lifelike' quality of the factual narrative rather than being forced to view the crime only as a cold and abstract concept"). We review a challenge to a trial court's decision to admit evidence under an abuse-of-discretion standard. *Davis*, 329 S.W.3d at 803. The trial court abuses its discretion only when its decision to admit evidence is "outside the zone of reasonable disagreement." *Id.*

Here, the testimony from Ammon's wife gave the jury some context about Ammon's work and family life. But even if her testimony was not helpful to the jury as "victim-background information," we conclude that her testimony was also not determinative of any fact of consequence to the prosecution and that the State's need for her testimony was slight. *See Casey*, 215 S.W.3d at 879. Newman complains only about Ammon's wife discussing the length of her marriage to Ammon, their children's names and ages, and Ammon's history of military service. On cross-examination, Newman established that Ammon's wife was not living with Ammon at the time of his death.

The district court could have determined, within the zone of reasonable disagreement, that the challenged testimony from Ammon's wife did not have a tendency to suggest a decision on an improper emotional basis such that the jurors would convict Newman of murder even if they had reasonable doubt of his guilt. *See Davis*, 329 S.W.3d at 806. Accordingly, we conclude that the district court did not abuse its discretion by implicitly

7

determining that no clear disparity existed between her testimony's degree of prejudice and its probative value and thus, admitting her testimony. *See id.* We overrule Newman's second issue.

**Denial of Instruction on Necessity**

In his third issue, Newman contends that the district court abused its discretion by denying his requested instruction on the defense of necessity. Our review of charge-error issues begins with a determination of whether error exists and then an evaluation of whether any harm resulting from the error requires reversal. *See Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Here, the record reflects that on the morning the charge conference resumed, Newman abandoned his request for the necessity instruction:

> Prosecutor]: Oh, and can I just put one other thing on the record? It's my understanding—and we had a discussion off the record last night before we left that the defense was abandoning their request for necessity, and we just never did that on the record, so I just wanted to make sure that was clear.
>
> [Defense counsel]: That's correct, Your Honor.
>
> The Court: Very well.

We conclude that any error as to the district court's denial of the necessity instruction was not preserved because Newman abandoned his request for it. *See Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) (concluding that trial court has no duty to instruct jury sua sponte on unrequested defensive issues and that "defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection: he has procedurally defaulted any such complaint"); *Long v. State*, 823 S.W.2d 259, 279 (Tex. Crim. App. 1991) (concluding that defendant preserved no error as to one

definition omitted from charge—although defendant initially objected to lack of that definition and submitted his proposed definition—because record reflected that defendant later abandoned his objections by accepting trial court's charge); *see also LaBlanche v. State*, No. 14-95-01133-CR, 1999 Tex. App. LEXIS 6794, at *12 (Tex. App.—Houston [14th Dist.] Sept. 9, 1999, pet. ref'd) (mem. op., not designated for publication) (declining to address defendant's contentions that trial court erred by denying her requests for jury-charge instructions that she abandoned in her post-submission motion). Accordingly, we overrule Newman's third and final issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   October 21, 2020

Do Not Publish

9