# Court of Appeals
## Tenth Appellate District of Texas

10-23-00412-CR

Rodney Dewayne Kuykendall,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
54th District Court of McLennan County, Texas
Judge Susan N. Kelly, presiding
Trial Court Cause No. 2023-704-C2

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

**MEMORANDUM OPINION**

A jury found Appellant, Rodney Dewayne Kuykendall, guilty of assault on a peace officer. Kuykendall pleaded true to the enhancement paragraph, and the trial court assessed his punishment at twenty-two years' confinement in the Institutional Division of the Texas Department of Criminal Justice. This appeal ensued. We will affirm.

## Background

During a prior jury trial in the 19th District Court, Kuykendall got into an altercation with a sheriff's deputy. During the State's closing argument in the punishment phase of the trial, Kuykendall's mother began shouting. The trial judge told her to stop yelling, but she continued to do so. After several unsuccessful attempts to quiet Kuykendall's mother, the trial judge ordered the sheriff's deputies in the courtroom to remove her from the courtroom. The trial judge also asked James Pack, a criminal investigator at the district attorney's office, to assist the sheriff's deputies in removing Kuykendall's mother.

Kuykendall's mother uses a wheelchair. During the trial, she had been sitting on a bench away from her wheelchair, which was located elsewhere in the courtroom. Upon the trial judge's request to remove Kuykendall's mother, Pack and the sheriff's deputies brought the wheelchair to her, picked her up, and placed her in the wheelchair.

When Pack and the sheriff's deputies started to move Kuykendall's mother, Kuykendall began yelling not to touch his mother. Kuykendall also jumped up from his chair and rushed toward his mother and the sheriff's deputies. At that time, Deputy Richard Burns, who had been sitting beside Kuykendall during the trial, grabbed Kuykendall around his waist and pulled

him back. Deputy Burns and Kuykendall fell to the ground while Deputy Burns attempted to restrain Kuykendall. During the altercation, Deputy Burns sustained an injury above his left eye.

## Discussion

In his sole issue, Kuykendall argues that the trial court erred by "fail[ing] to limit the culpable mental state jury instructions as they correlated to the conduct elements involved in assault causing bodily injury against a peace officer." Specifically, Kuykendall claims that the trial court failed to properly tailor the "intentionally" and "knowingly" definitions to a result-oriented offense. The trial court included the following definitions of the "intentionally" and "knowingly" culpable mental states in the abstract portion of the jury charge:

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the circumstances surrounding his conduct when he is aware that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

STANDARD OF REVIEW

We review alleged jury-charge error by considering two questions: (1) whether error existed in the charge, and (2) if error existed, whether sufficient

harm resulted from the error to compel reversal. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022); *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). If there was a timely objection to the error in the jury charge, the record need only show "some harm" to justify reversal of the conviction. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022). "Some harm" means actual harm rather than merely a theoretical complaint. *Id.* If a defendant fails to object to the error in the jury charge, the record must show that the defendant suffered "egregious harm" to justify reversal. *Alkayyali v. State*, 713 S.W.3d 780, 789 (Tex. Crim. App. 2025). "An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Alcoser*, 663 S.W.3d at 165). Egregious harm must also be based on actual, rather than theoretical harm. *Id.*

ANALYSIS

We begin by determining whether error existed in the jury charge. *See Ngo*, 175 S.W.3d at 744. Article 36.14 of the Code of Criminal Procedure states that the trial court shall deliver to the jury a charge "distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any

argument . . . calculated to arouse the sympathy or excite the passions of the jury." TEX. CRIM. PROC. CODE ANN. art. 36.14.

There are three "conduct elements" that may be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994); *see* TEX. PENAL CODE ANN. § 6.03. The language in a jury charge regarding the culpable mental state must be tailored to the conduct elements of the offense. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). "A trial court errs when it fails to limit the language [of a jury charge] in regard to the applicable culpable mental states to the appropriate conduct element." *Id.*

Citing *Johnson v. State*, 271 S.W.3d 756, 761 (Tex. App.—Waco 2008, pet. ref'd), Kuykendall asserts that assault causing bodily injury is a result-oriented offense. Kuykendall claims that, as such, the abstract section of the jury charge should have limited the definitions of "intentionally" and "knowingly" to the result of the conduct. But Kuykendall was charged with assault *on a peace officer*, not just assault causing bodily injury.

Assault on a peace officer has two separate culpable mental states. *See* TEX. PENAL CODE ANN. § 22.01. First, as limited by the indictment in this case, a person must have "intentionally, knowingly, or recklessly cause[d] bodily

injury to another." *See id.* § 22.01(a)(1). Therefore, the person must have acted intentionally, knowingly, or recklessly with respect to the result of his conduct. *See Cole v. State*, 46 S.W.3d 427, 434 (Tex. App.—Fort Worth 2001, pet. ref'd); *see also Faulkenberry v. State*, No. 03-18-00265-CR, 2018 WL 3625791, at *3 (Tex. App.—Austin July 31, 2018, no pet.) (mem. op., not designated for publication). Second, the person must have committed the assault against a person that he knew was a peace officer while the officer was lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. § 22.01(b-2). Therefore, the person must also have acted knowingly with respect to the circumstances surrounding his conduct. *See Cole*, 46 S.W.3d at 434; *see also Faulkenberry*, 2018 WL 3625791, at *3. Thus, the trial court should have limited the definition of "intentionally" in the jury charge to the result-of-conduct element and instructed the jury on the entire statutory definition of "knowingly," which includes both the result-of-conduct and circumstances-surrounding-conduct elements. *See* TEX. PENAL CODE ANN. § 6.03(a), (b); *Price*, 457 S.W.3d at 441.

Here, the trial court did correctly instruct the jury on the entire statutory definition of "knowingly"; however, the definition of "intentionally" in the jury charge included language addressing the nature-of-conduct element. As such, the definition of "intentionally" in the jury charge was not properly limited to

the appropriate conduct element and is therefore erroneous. *See Price*, 457 S.W.3d at 441.

Having determined that the jury charge contained error, we next turn to the issue of whether sufficient harm resulted from the error to compel reversal. *See Ngo*, 175 S.W.3d at 744. Kuykendall concedes that he did not object to the definitions of the culpable mental states in the jury charge during trial. As such, Kuykendall is not entitled to reversal unless he was egregiously harmed. *See Alkayyali*, 713 S.W.3d at 789; *Campbell*, 664 S.W.3d at 245.

"An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory." *Alcoser*, 663 S.W.3d at 165. Our analysis considers the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the arguments of counsel, and any other relevant information from the trial record. *Alkayyali*, 713 S.W.3d at 789.

We "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995) (quoting *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994)). The Court of Criminal Appeals has stated that, "[w]here the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d

633, 640 (Tex. Crim. App. 1999); *Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd).  Here, the application paragraph of the jury charge correctly instructed the jury and limited the language regarding the applicable culpable mental states to the appropriate conduct elements.

Additionally, both Kuykendall's and the State's closing arguments focused on the culpable mental state of recklessly, rather than intentionally or knowingly.  During the State's closing argument, the prosecutor stated:

> And now, we have three different mental states that a person can be in that will get you to the assault.  Right?  You've got intentionally, knowingly, or recklessly.  And you remember in jury selection [the other prosecutor] went over the fact that y'all don't have to agree on which one it is, just each of y'all have to agree there was one.
>
> And I want to go a little more over recklessly.  Right?  Because we -- we've talked about, you know, he wasn't punching.  He wasn't hitting.  But he was in four feet of space trying to lunge over a bar to get to the deputies and his mom.  When Deputy Burns stopped him and he fought back, he should have known what was going to happen.  He should have known that fighting back was going to cause someone to get hurt. No question about that.

The culpable mental states of intentionally and knowingly were only briefly mentioned in Kuykendall's closing argument:  "I don't think there's any way that you can construe any of this evidence that it was ever his *intent* that Deputy Burns got that gash on his eye.  I definitely don't think it was *knowingly*."  [Emphasis added.]  More time was devoted to a discussion of the mental state of recklessly.

For these reasons, we conclude that while the trial court erred in failing to limit the jury charge definition of "intentionally" to the appropriate conduct element, such error did not affect the very basis of the case, deprive Kuykendall of a valuable right, or vitally affect a defensive theory. *See Alkayyali*, 713 S.W.3d at 789; *Medina*, 7 S.W.3d at 640. Therefore, such error was not egregiously harmful and does not justify reversal. *See Alkayyali*, 713 S.W.3d at 789; *Alcoser*, 663 S.W.3d at 165.

## Conclusion

We overrule Kuykendall's sole issue and affirm the judgment of the trial court.

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: October 16, 2025

Before Chief Justice Johnson,
    Justice Smith, and
    Justice Harris
Affirmed
Do not publish
CRPM

